IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

STEVEN T. ASH, Individually and as Parent and Natural Guardian of TYLER ASH and
KELSEY ASH (minors); ANASTASIOS BOUSSOULAS, Individually and as Parent and
Natural Guardian of ELIAS BOUSSOULAS and PETER BOUSSOULAS (minors); WILLIAM
K. DEAL; SHELBY W. DEAL; WILLIAM HEATH DEAL; DAWN DEAL, Individually and as
Parent and Natural Guardian of HANNAH C. DEAL, WILLIAM HAYDEN DEAL and
CONNOR H. DEAL (minors); JOSHUA A. DREITH; NICHOLAS A. DREITH; RICHARD R.
GROSS, Individually and as Parent and Natural Guardian of EVAN GROSS and AUSTIN
GROSS (minors); DEBRA HILL; ERIN HILL; ROBERT JACOBS, Individually and as Parent
and Natural Guardian of BRITTANY JACOBS and BRANDON JACOBS (minors); JOYCE
LEE; WENDY PADILLA; MATTHEW G. STEED; NICOLE STEED; and HAN YOO,
      Plaintiffs,
v.

ROYAL CARIBBEAN CRUISES LTD.,
RDVT SAR d/b/a RENDEZVOUS TOUR COMPANY,
DUTCH TOURS ENTERPRISES N.V., and
XYZ CORPORATION(S),
      Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs hereby sue Defendants and allege as follows:

### JURISDICTIONAL AND PRELIMINARY ALLEGATIONS

1.  Plaintiffs, STEVEN T. ASH, Individually and as Parent and Natural Guardian of TYLER

ASH and KELSEY ASH (minors) are residents of California.  Plaintiffs, ANASTASIOS

BOUSSOULAS, Individually and as Parent and Natural Guardian of ELIAS BOUSSOULAS

and PETER BOUSSOULAS (minors) are citizens of Canada.  Plaintiffs, WILLIAM K. DEAL,

SHELBY W. DEAL, WILLIAM HEATH DEAL, DAWN DEAL, Individually and as Parent and

Natural Guardian of HANNAH C. DEAL, WILLIAM HAYDEN DEAL and CONNOR H.

DEAL (minors) are residents of Arkansas.  Plaintiffs, JOSHUA A. DREITH and NICHOLAS A.

DREITH are citizens of Canada.  Plaintiffs, RICHARD R. GROSS, Individually and as Parent and Natural Guardian of EVAN GROSS and AUSTIN GROSS (minors) are residents of Texas. Plaintiffs, DEBRA HILL and ERIN HILL are residents of Arizona.  Plaintiffs, ROBERT JACOBS, Individually and as Parent and Natural Guardian of BRITTANY JACOBS and BRANDON JACOBS (minors) are residents of California.  Plaintiff, JOYCE LEE, is a resident of Washington.  Plaintiff, WENDY PADILLA, is a resident of Massachusetts.  Plaintiffs, MATTHEW G. STEED and NICOLE STEED, are residents of Utah.  Plaintiff, HAN YOO, is a resident of Massachusetts. (All collectively referred to as "Plaintiffs").

2.   Defendant, ROYAL CARIBBEAN CRUISES LTD. (hereinafter "RCCL"), is a foreign entity with its principal place of business in Florida.

3.   Defendant, RDVT SAR d/b/a RENDEZVOUS TOUR COMPANY, upon information and belief, is a foreign entity doing business in St. Maarten.

4.   Defendant, DUTCH TOURS ENTERPRISES N.V., upon information and belief, is a foreign entity doing business in St. Maarten.

5.   Defendant, XYZ CORPORATION(S), is included to represent the owner(s) and/or operator(s) of the subject shore excursion, insofar as such entity has a different name than the named Defendants herein.   According to RCCL, the "tour operator" of the subject shore excursion is RDVT SAR d/b/a RENDEZVOUS TOUR COMPANY.   Pursuant to Plaintiffs' preliminary investigation, DUTCH TOURS ENTERPRISES N.V. is also believed to have owned and/or operated the subject shore excursion.  XYZ CORPORATION(S) is (are) included in the event that discovery reveals any other entities are involved. XYZ CORPORATION(S) is (are) also used in a plural form.  In the event that discovery reveals that additional entities, other than the named Defendants herein, contributed to the ownership, operation, and/or management of the

subject shore excursion, the legal names of the entities will be substituted for XYZ CORPORATION(S).

6.   The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.  In the event diversity jurisdiction does not apply, then this matter is brought under the admiralty and maritime jurisdiction of the Court.

7.   At all times material hereto, all Defendants, personally or through an agent:

  a.   Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

  b.   Were engaged in substantial activity within this state;

  c.   Operated vessels in the waters of this state;

  d.   Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 and/or 48.193;

  e.   The acts of Defendants set out in this Complaint occurred in whole or in part in this county and/or state.

  f.   The Defendant, RCCL, was engaged in the business of providing to the public and to the Plaintiffs in particular, for compensation, vacation cruises aboard the vessel, the *Freedom of the Seas*.

8.   Defendants are subject to the jurisdiction of the Courts of this State.

9.   The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

10. At all times material hereto, RCCL owned, operated, managed, maintained and/or controlled the vessel, the *Freedom of the Seas*.

11. At all times material hereto, Defendants, RDVT SAR d/b/a RENDEZVOUS TOUR COMPANY, DUTCH TOURS ENTERPRISES N.V. and/or XYZ CORPORATION(S) (hereinafter collectively referred to as "the Excursion Entities" in a manner so as to retain each Defendant's separate and individual liability in the event said Defendants are severed) owned and/or operated the subject shore excursion, "Loterie Farm Treetop Adventure Tour," which was offered, arranged for, sponsored, recommended, marketed, sold, co-operated and/or managed by RCCL.

12. The Excursion Entities are believed to have entered into a contract with RCCL for the protection of RCCL's passengers, whereby the Excursion Entities agreed to subject themselves to the laws and jurisdiction of the State of Florida, consented to personal jurisdiction over themselves, and consented to the venue of the United States District Court for the Southern District of Florida.  As alleged in Count V, Plaintiffs are third-party beneficiaries to the contract between RCCL and the Excursion Entities.

13. The Excursion Entities are believed to have also agreed to indemnify RCCL for the claims made in this Complaint within the meaning of Florida Statute § 48.193(d).

14. Furthermore, the Excursion Entities are subject to the jurisdiction of this Court because they maintain an office and sell shore excursion tickets in Miami, Florida and/or sell shore excursion tickets through RCCL's website which is administered in Florida.

15. Alternatively, the Excursion Entities are subject to the jurisdiction of this Court under Federal Rule of Civil Procedure 4(k)(2) because they maintain an office and sell shore excursion tickets in the United States and/or sell shore excursion tickets through RCCL's website which is administered in the United States.

## FACTS COMMON TO ALL COUNTS

16. On or about July 19, 2012, Plaintiffs were paying passengers aboard the *Freedom of the Seas* which was in navigable waters.

17. At all times material hereto, excursions from the *Freedom of the Seas* were advertised to passengers and the Plaintiffs in RCCL's website and RCCL's promotional material, including, but not limited to, brochures which contained RCCL's logo.

18. At all times material hereto, RCCL offered passengers aboard the *Freedom of the Seas* and the Plaintiffs the opportunity to go on various shore excursions during the subject cruise, including, but not limited to, the Loterie Farm Treetop Adventure Tour.

19. At all times material hereto, RCCL had a shore excursion desk aboard the *Freedom of the Seas* for the purpose of, *inter alia*, providing RCCL passengers recommendations regarding shore excursions and charging RCCL passengers for shore excursions.

20. At all times material hereto, RCCL sold tickets for the Loterie Farm Treetop Adventure Tour to passengers aboard the *Freedom of the Seas*, including the Plaintiffs, during the subject cruise.

21. At all times material hereto, despite request, RCCL did not provide any information to Plaintiffs with respect to the name(s), address(es), owner(s) and/or operator(s) of the Loterie Farm Treetop Adventure Tour.

22. On or about July 19, 2012, as part of Plaintiffs' cruise aboard the *Freedom of the Seas*, Plaintiffs participated in the Loterie Farm Treetop Adventure Tour in St. Maarten. This excursion was arranged for, sponsored, recommended, operated, marketed, and/or sold by RCCL as part of the voyage on the subject cruise.

23. On or about July 19, 2012, Plaintiffs suffered severe and permanent injuries when the bus driver for the Loterie Farm Treetop Adventure Tour lost control of the bus and crashed into a ditch in route to Loterie Farm.

24. At all times material hereto, the Excursion Entities were the agent(s) and/or apparent agent(s) of RCCL by virtue of the following, such that RCCL is estopped from denying that RCCL was the agent for the Excursion Entities:

    a.   RCCL made all arrangements for the subject shore excursion without disclosing to Plaintiffs that the subject shore excursion was being run by another entity (and/or entities); and/or

    b.   RCCL marketed the subject shore excursion using its company logo on its website and/or in its brochures and/or on its ship without disclosing to Plaintiffs that the subject shore excursion was being run by another entity (and/or entities); and/or

    c.   RCCL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject shore excursion without disclosing to Plaintiffs that the subject shore excursion was being run by another entity (and/or entities); and/or

    d.   RCCL recommended its passengers to not engage in excursions, tours and/or activities that are not sold through RCCL; and/or

    e.   Until the point that Plaintiffs actually participated in the subject shore excursion, the Plaintiffs' exclusive contacts concerning the subject shore excursion was with RCCL and/or RCCL's onboard excursion desk; and/or

    f.   The fee for the subject shore excursion was charged to the Plaintiffs, and collected from the Plaintiffs, exclusively by RCCL; and/or

g.  Plaintiffs received their receipts exclusively from RCCL for the purchase of the subject shore excursion.

25. At all times material hereto, Plaintiffs relied on the above, to their detriment, so as to believe that the Excursion Entities were the employee(s) and/or agent(s) of RCCL, in choosing the subject shore excursion.  At no time did RCCL represent to Plaintiffs in particular, or the ship's passengers in general, in a meaningful way that the Excursion Entities were not agent(s) and/or employee(s) of RCCL.

26. At all times material hereto, RCCL was the owner or co-owner of the subject shore excursion.  At all times material hereto, RCCL was responsible for, and liable for, the actions of the Excursion Entities with respect to the subject shore excursion.

27. In the alternative, at all times material hereto, a partnership and/or joint venture existed between the Excursion Entities by virtue of the following, whereby RCCL and the Excursion Entities are jointly and severally responsible for the negligence of each other as partners of the partnership and/or joint venture:

a.  RCCL and the Excursion Entities entered into an agreement whereby: RCCL made all arrangements for the Plaintiffs, on behalf of the partnership with the Excursion Entities, for the subject shore excursion being run by the Excursion Entities; and/or

b.  RCCL marketed on RCCL's website and/or in its brochures and/or on its ship, on behalf of the partnership with the Excursion Entities, the subject shore excursion being run by the Excursion Entities; and/or

c.  RCCL maintained an excursion desk on its ship where it offered, sold, provided information to, and answered questions of passengers, on behalf of the partnership with the Excursion Entities, about the subject shore excursion being run by the Excursion Entities; and/or

d.  The Excursion Entities provided the equipment to be used in the subject shore excursion; and/or

e.  RCCL determined the amount of money charged for the subject shore excursion being run by the Excursion Entities; and/or

f.  RCCL collected the amount of money charged for the subject shore excursion being run by the Excursion Entities; and/or

g.  RCCL paid the Excursion Entities a portion of the sales of tickets for the subject shore excursion after the subject shore excursion tickets were sold; and/or

h.  RCCL shared profits and losses with the Excursion Entities for the subject shore excursion.

28. At all times material hereto, RCCL was an agent for the Excursion Entities in the United States.

29. At all times material hereto, RCCL was a partner in the subject shore excursion.

30. At all times material hereto, RCCL operated and/or supervised the subject shore excursion.

31. At all times material hereto, the Excursion Entities owned and operated the subject shore excursion.  The Excursion Entities were involved in providing the subject shore excursion to Plaintiffs.  At all times material hereto, the Excursion Entities were the agent(s), apparent agent(s), joint venturer(s), servant(s), and/or employee(s) of RCCL and at all times acted within the course and scope of their agency, apparent agency, joint venture, service and/or employment.

## COUNT I – NEGLIGENCE AGAINST RCCL

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-one (31) as though alleged originally herein.

32. It was the duty of RCCL to provide Plaintiffs with reasonable care under the circumstances.

33. On or about July 19, 2012, RCCL and/or its agents, servants, joint venturers and/or employees breached its duty to provide Plaintiffs with reasonable care under the circumstances.

34. Plaintiffs were injured due to the fault and/or negligence of RCCL and/or its agents, servants, joint venturers and/or employees for acts and/or omissions that include, but are not limited to, the following:

   a.   Failure to provide a safe excursion; and/or

   b.   Failure to properly supervise and oversee the excursion marketed, advertised, offered and sold to its guests; and/or

   c.   Failure to adequately inspect and/or monitor excursion providers so as to ensure that the subject shore excursion was reasonably safe for cruise passengers and the Plaintiffs; and/or

   d.   Failure to adequately inspect and/or monitor the subject shore excursion so as to ensure that the transportation used in the subject shore excursion was reasonably safe for Plaintiffs and cruise passengers; and/or

   e.   Failure to adequately inspect and/or monitor the bus for the subject shore excursion so as to ensure that it was reasonably safe for cruise ship passengers; and/or

   f.   Failure to promulgate and/or enforce adequate policies and procedures to ensure that the transportation used for the subject shore excursion was reasonably safe for cruise ship passengers; and/or

   g.   Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the transportation used for the subject shore excursion was reasonably safe for cruise ship passengers; and/or

h.  Failure to promulgate and/or enforce adequate policies and procedures to ensure that the transportation used for the subject shore excursion was regularly and adequately inspected and/or maintained; and/or

i.  Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the transportation used for the subject shore excursion was regularly and adequately inspected and/or maintained; and/or

j.  Failure to provide reasonably safe transportation for Plaintiffs and other cruise passengers participating in the subject shore excursion; and/or

k.  Failure to require the Excursion Entities to provide reasonably safe transportation for cruise ship passengers; and/or

l.  Failure to provide a competent driver for the transportation used for the subject shore excursion; and/or

m.  Failure to require the Excursion Entities to provide a competent driver for the transportation used for the subject shore excursion;

n.  Failure to adequately warn Plaintiffs of the dangers of participating in the subject shore excursion; and/or

o.  Failure to adequately warn Plaintiffs of the dangers involved in driving a bus through such a steep and narrow road; and/or

p.  Failure to ensure that the route taken to the shore excursion was reasonably safe considering the transportation used; and/or

q.  Failure to advise the Plaintiffs and other cruise ship passengers that RCCL does not inspect and/or maintain the transportation used for the subject shore excursion; and/or

r.   Failure to advise the Plaintiffs and other cruise ship passengers that RCCL does not verify that the transportation used for the subject shore excursion is reasonably safe, inspected, and/or maintained; and/or

s.   Failure to ensure that properly trained and supervised persons operated the subject shore excursion; and/or

t.   Having a shore excursion that was not competently operated; and/or

u.   Negligently selecting and/or retaining the Excursion Entities to operate the subject excursion despite their incompetence and/or unfitness; and/or

v.   Failure to require the Excursion Entities to provide proper emergency medical care; and/or

w.   Failure to require the Excursion Entities to provide prompt and proper medical care; and/or

x.   Failure to provide proper emergency medical care; and/or

y.   Failure to provide prompt and proper medical care;

All of which caused the Plaintiffs to suffer severe and permanent injuries when the bus driver for the Loterie Farm Treetop Adventure Tour lost control of the bus and crashed into a ditch in route to Loterie Farm.

35. At all times material hereto, RCCL had exclusive custody and control of the vessel, the *Freedom of the Seas*.

36. At all times material hereto, RCCL negligently failed to determine the hazards that the excursion posed to Plaintiffs, failed to eliminate the hazard, failed to modify the hazard and failed to properly warn Plaintiffs of the hazard.  In addition, RCCL violated the International

Safety Management Code and failed to have a proper, adequate and safe Safety Management System Manual.  All of the above caused the Plaintiffs to be injured.

37. RCCL knew of the foregoing conditions causing the subject accident and did not correct them, or the conditions existed for a sufficient length of time so that RCCL, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

38. As a result of the negligence of RCCL, the Plaintiffs were injured about Plaintiffs' bodies and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicaps, lost earnings and lost earning capacity both past and future.  The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future. In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

## COUNT II – NEGLIGENCE AGAINST THE EXCURSION ENTITIES

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-one (31) as though alleged originally herein.

39. At all times material hereto, the Excursion Entities owned and/or operated the subject shore excursion.

40. It was the duty of the Excursion Entities to provide Plaintiffs with reasonable care under the circumstances.

41. On or about July 19, 2012, the Excursion Entities and/or their agents, servants, joint venturers and/or employees breached their duty to provide Plaintiffs with reasonable care under the circumstances.

42. Plaintiffs were injured due to the fault and/or negligence of the Excursion Entities and/or their agents, servants, joint venturers and/or employees for acts and/or omissions that include, but are not limited to, the following:

    a.   Failure to provide a safe excursion; and/or

    b.   Failure to properly supervise and oversee the excursion marketed, advertised, offered and sold to its guests; and/or

    c.   Failure to adequately inspect and/or monitor excursion providers so as to ensure that the subject shore excursion was reasonably safe for cruise passengers and the Plaintiffs; and/or

    d.   Failure to adequately inspect and/or monitor the subject shore excursion so as to ensure that the transportation used in the subject shore excursion was reasonably safe for Plaintiffs and cruise passengers; and/or

    e.   Failure to adequately inspect and/or monitor the bus for the subject shore excursion so as to ensure that it was reasonably safe for cruise ship passengers; and/or

    f.   Failure to promulgate and/or enforce adequate policies and procedures to ensure that the transportation used for the subject shore excursion was reasonably safe for cruise ship passengers; and/or

    g.   Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the transportation used for the subject shore excursion was reasonably safe for cruise ship passengers; and/or

h.   Failure to promulgate and/or enforce adequate policies and procedures to ensure that the transportation used for the subject shore excursion was regularly and adequately inspected and/or maintained; and/or

i.   Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the transportation used for the subject shore excursion was regularly and adequately inspected and/or maintained; and/or

j.   Failure to provide reasonably safe transportation for Plaintiffs and other cruise passengers participating in the subject shore excursion; and/or

k.   Failure to require the Excursion Entities to provide reasonably safe transportation for cruise ship passengers; and/or

l.   Failure to provide a competent driver for the transportation used for the subject shore excursion; and/or

m.   Failure to require the Excursion Entities to provide a competent driver for the transportation used for the subject shore excursion;

n.   Failure to adequately warn Plaintiffs of the dangers of participating in the subject shore excursion; and/or

o.   Failure to adequately warn Plaintiffs of the dangers involved in driving a bus through such a steep and narrow road; and/or

p.   Failure to ensure that the route taken to the shore excursion was reasonably safe considering the transportation used; and/or

q.   Failure to advise the Plaintiffs and other cruise ship passengers that RCCL does not inspect and/or maintain the transportation used for the subject shore excursion; and/or

r.   Failure to advise the Plaintiffs and other cruise ship passengers that RCCL does not verify that the transportation used for the subject shore excursion is reasonably safe, inspected, and/or maintained; and/or

s.   Failure to ensure that properly trained and supervised persons operated the subject shore excursion; and/or

t.   Having a shore excursion that was not competently operated; and/or

u.   Failure to require the Excursion Entities to provide proper emergency medical care; and/or

v.   Failure to require the Excursion Entities to provide prompt and proper medical care; and/or

w.   Failure to provide proper emergency medical care; and/or

x.   Failure to provide prompt and proper medical care;

All of which caused the Plaintiffs to suffer severe and permanent injuries when the bus driver for the Loterie Farm Treetop Adventure Tour lost control of the bus and crashed into a ditch in route to Loterie Farm.

43. At all times material hereto, the Excursion Entities had exclusive custody and control of the subject shore excursion.

44. The Excursion Entities knew of the foregoing conditions causing the subject accident and did not correct them, or the conditions existed for a sufficient length of time so that the Excursion Entities, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

45. As a result of the negligence of the Excursion Entities, the Plaintiffs were injured about Plaintiffs' bodies and extremities, suffered physical pain, mental anguish, loss of enjoyment of

life, disability, disfigurement, post traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicaps, lost earnings and lost earning capacity both past and future.  The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future. In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

### COUNT III – APPARENT AGENCY OR AGENCY BY ESTOPPEL CLAIM AGAINST RCCL

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-one (31) as though alleged originally herein.

46. At all times material hereto, the Excursion Entities were the apparent agent(s) of RCCL.

47. At all times material hereto, RCCL is estopped to deny that the Excursion Entities were their agent(s) or employee(s).

48. At all times material hereto, RCCL made manifestations which caused Plaintiffs to believe that the Excursion Entities had authority to act for the benefit of RCCL. These manifestations included:

a.  RCCL allowed its name to be utilized in connection with the advertising of the Excursion Entities; and/or

b.  RCCL made all arrangements for the subject shore excursion without effectively disclosing to Plaintiffs that the subject shore excursion was being run by another entity (and/or entities); and/or

c.   RCCL marketed the subject shore excursion using its company logo on its website and/or in its brochures and/or on its ship without effectively disclosing to Plaintiffs that the subject shore excursion was being run by another entity (and/or entities); and/or

d.   RCCL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject shore excursion without effectively disclosing to Plaintiffs that the subject shore excursion was being run by another entity (and/or entities); and/or

e.   Until the point that Plaintiffs actually participated in the subject shore excursion, the Plaintiffs' exclusive contacts concerning the subject shore excursion was with RCCL; and/or

f.   RCCL recommended to Plaintiffs to not engage in excursions, tours or activities that are not sold through RCCL as RCCL has no familiarity with other tours or their operations; and/or

g.   Plaintiffs received their receipts exclusively from RCCL for the purchase of the subject shore excursion; and/or

h.   The fee for the excursion was charged to the Plaintiffs, and collected from the Plaintiffs, exclusively by RCCL.

49. Plaintiffs reasonably relied on the above, to their detriment, so as to believe that the Excursion Entities were the employee(s) and/or agent(s) of RCCL in choosing the subject shore excursion.

50. It was reasonable to believe that the Excursion Entities were RCCL's employee(s) and/or agent(s) because the Plaintiffs booked, paid for and made all necessary arrangements for the subject shore excursion with RCCL. RCCL's actions caused Plaintiffs to believe that the Excursion Entities had authority to act on RCCL's behalf. At no time did the Excursion Entities

represent to the Plaintiffs in particular or the ship's passengers in a meaningful way that the Excursion Entities were not agents or employees of RCCL.

51. Plaintiffs' reasonable reliance was detrimental because they would not have booked, paid for and/or participated in the subject shore excursion or incur any injuries had the Plaintiffs known the subject shore excursion was not operated by RCCL.

52. The foregoing acts of negligence of RCCL and/or the Excursion Entities were a direct and proximate cause of the Plaintiffs' injuries and damages.

53. As a result of the negligence of the Defendants, the Plaintiffs were injured about Plaintiffs' bodies and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicaps, lost earnings and lost earning capacity both past and future.  The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future. In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

**COUNT IV – JOINT VENTURE BETWEEN RCCL AND THE EXCURSION ENTITIES**

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-one (31) as though alleged originally herein.

54. At all times material hereto, RCCL and the Excursion Entities engaged in a joint venture to provide excursions to passengers aboard RCCL's ship(s).

55. At all times material hereto, RCCL and the Excursion Entities entered into an agreement where RCCL would sell the subject shore excursion to its passengers and the Excursion Entities would operate the subject shore excursion.

56. As its part of the joint venture, RCCL arranged for, sponsored, recommended, marketed, operated, marketed, sold and/or collected money for the subject shore excursion and the money was then shared between RCCL and the Excursion Entities. As its part of the joint venture, the Excursion Entities provided labor and/or operated the subject shore excursion.

57. RCCL, on behalf of the joint venture, charged a fee to passengers who utilized the excursions. The fee was split between RCCL and the Excursion Entities.

58. At all times material hereto, RCCL and the Excursion Entities had joint and/or shared control over aspects of the joint venture. The Excursion Entities had control over the day-to-day workings of the excursions. RCCL also had control over the day-to-day workings of the excursions in that they required the Excursion Entities to exercise reasonable care in the operation of the subject shore excursion. RCCL had control over the arrangements, marketing and sales of the excursion.

59. At all times material hereto, RCCL and the Excursion Entities shared a common purpose: to operate the subject shore excursion for a profit.

60. At all times material hereto, RCCL and the Excursion Entities had a joint proprietary and/or ownership interest in the subject shore excursion. RCCL had an interest in arranging, sponsoring, recommending, advertising, operating, and selling the subject shore excursion as well as collecting money for such excursion, and the Excursion Entities had a proprietary interest in the time and labor expended in operating the subject shore excursion.

61. At all times material hereto, RCCL and the Excursion Entities shared any losses sustained from the joint venture.

62. RCCL and the Excursion Entities are jointly and severally responsible for each other's negligence as partners of the partnership and/or joint venture.

63. At all times material hereto, RCCL and the Excursion Entities therefore:

    a.  Had an intention to create a joint venture;

    b.  Had a joint proprietary interest in the subject matter of the venture;

    c.  Had mutual control and/or joint control over the subject matter of the venture with respect to the provision of excursions to passengers aboard the ship;

    d.  Had a right to share in the profits of the joint venture; and

    e.  Would share losses which may have been sustained.

64. As joint venturers, RCCL and the Excursion Entities are liable for each other's negligence.  As a result, RCCL is liable for the negligent conduct of the Excursion Entities.

65. As a result of the negligence of Defendants, the Plaintiffs were injured about Plaintiffs' bodies and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicaps, lost earnings and lost earning capacity both past and future.  The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future. In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs.

      **WHEREFORE**, Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

## COUNT V – THIRD PARTY BENEFICIARY

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-one (31) as though alleged originally herein.

66. RCCL and the Excursion Entities entered into a contract to provide excursions for passengers on board RCCL's ship(s).

67. The contract between the parties clearly manifested the intent of the contracting parties that the contract primarily and directly benefits the third-party Plaintiffs by requiring the Excursion Entities to exercise reasonable care in the operation of the subject shore excursion.

68. The contract between the parties clearly manifested the intent of the contracting parties that the contract primarily and directly benefit the third-party Plaintiffs by requiring the Excursion Entities to maintain insurance and/or exercise reasonable care in the operation of the subject shore excursion.

69. This contract was breached by RCCL and the Excursion Entities for acts and/or omissions that include, but are not limited to, the following:

a.  Failure to provide a safe excursion; and/or

b.  Failure to properly supervise and oversee the excursion marketed, advertised, offered and sold to its guests; and/or

c.  Failure to adequately inspect and/or monitor excursion providers so as to ensure that the subject shore excursion was reasonably safe for cruise passengers and the Plaintiffs; and/or

d.  Failure to adequately inspect and/or monitor the subject shore excursion so as to ensure that the transportation used in the subject shore excursion was reasonably safe for Plaintiffs and cruise passengers; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

e.   Failure to adequately inspect and/or monitor the bus for the subject shore excursion so as to ensure that it was reasonably safe for cruise ship passengers; and/or

f.   Failure to promulgate and/or enforce adequate policies and procedures to ensure that the transportation used for the subject shore excursion was reasonably safe for cruise ship passengers; and/or

g.   Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the transportation used for the subject shore excursion was reasonably safe for cruise ship passengers; and/or

h.   Failure to promulgate and/or enforce adequate policies and procedures to ensure that the transportation used for the subject shore excursion was regularly and adequately inspected and/or maintained; and/or

i.   Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the transportation used for the subject shore excursion was regularly and adequately inspected and/or maintained; and/or

j.   Failure to provide reasonably safe transportation for Plaintiffs and other cruise passengers participating in the subject shore excursion; and/or

k.   Failure to require the Excursion Entities to provide reasonably safe transportation for cruise ship passengers; and/or

l.   Failure to provide a competent driver for the transportation used for the subject shore excursion; and/or

m. Failure to require the Excursion Entities to provide a competent driver for the transportation used for the subject shore excursion;

n.  Failure to adequately warn Plaintiffs of the dangers of participating in the subject shore excursion; and/or

o.  Failure to adequately warn Plaintiffs of the dangers involved in driving a bus through such a steep and narrow road; and/or

p.  Failure to ensure that the route taken to the shore excursion was reasonably safe considering the transportation used; and/or

q.  Failure to advise the Plaintiffs and other cruise ship passengers that RCCL does not inspect and/or maintain the transportation used for the subject shore excursion; and/or

r.  Failure to advise the Plaintiffs and other cruise ship passengers that RCCL does not verify that the transportation used for the subject shore excursion is reasonably safe, inspected, and/or maintained; and/or

s.  Failure to ensure that properly trained and supervised persons operated the subject shore excursion; and/or

t.  Having a shore excursion that was not competently operated; and/or

u.  Negligently selecting and/or retaining the Excursion Entities to operate the subject excursion despite their incompetence and/or unfitness; and/or

v.  Failure to require the Excursion Entities to provide proper emergency medical care; and/or

w.  Failure to require the Excursion Entities to provide prompt and proper medical care; and/or

x.  Failure to provide proper emergency medical care; and/or

y.  Failure to provide prompt and proper medical care;

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .

All of which caused the Plaintiffs to suffer severe and permanent injuries when the bus driver for the Loterie Farm Treetop Adventure Tour lost control of the bus and crashed into a ditch in route to Loterie Farm.

70. As a result of the negligence of the Defendants, the Plaintiffs were injured about Plaintiffs' bodies and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicaps, lost earnings and lost earning capacity both past and future.  The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future. In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

Dated on this 20th day of February, 2013.

> LIPCON, MARGULIES,
> ALSINA & WINKLEMAN, P.A.
> *Counsel for Plaintiff*
> One Biscayne Tower, Suite 1776
> 2 South Biscayne Boulevard
> Miami, Florida 33131
> Telephone No.: (305) 373-3016
> Facsimile No.: (305) 373-6204
> Email: mwinkleman@lipcon.com
>
> By: */s/* Michael A. Winkleman
> **MICHAEL A. WINKLEMAN**
> Florida Bar No. 36719