IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

CASE NO. 13-20619-CIV-GOODMAN
[CONSENT CASE]

STEVEN T. ASH, et al.,
        Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES LTD.,
RDVT SAR d/b/a RENDEZVOUS TOUR COMPANY,
and DUTCH TOURS ENTERPRISES N.V.,
        Defendants.
_____/

STEVEN T. ASH, et al.,
        Garnishors,

v.

ROYAL CARIBBEAN CRUISES LTD.,
CELEBRITY CRUISES INC., CARNIVAL
CORPORATION, and SILVERSEA CRUISES LTD. (INC.),
        Garnishees.
_____/

### ORDER REJECTING REQUEST TO VACATE RULE B ATTACHMENTS

This matter is before the Court following a post-attachment Local Admiralty Rule B(5)(b) hearing.[1]  [ECF No. 116].  In sum, Plaintiffs' *quasi in rem* claim pushes the outer boundary of admiralty jurisdiction but it is nonetheless sufficient to permit the attachments to remain against Defendant Dutch Tours Enterprises, N.V. ("Dutch

---

[1]      This case was referred to the Undersigned for all further proceedings, including trial and entry of a final judgment.  [ECF No. 94].

1

Tours"). The Undersigned therefore **DENIES** Dutch Tours' request to vacate Plaintiffs' Rule B attachments.

## I.      BACKGROUND

This case arises out of a bus accident that occurred on the island of St. Maarten. The twenty-eight Plaintiffs were passengers aboard the *Freedom of the Stars*, a cruise ship operated by defendant Royal Caribbean Cruises Ltd. ("Royal Caribbean"). While aboard the *Freedom of the Stars*, the Plaintiffs each purchased tickets for the "Loterie Farm Treetop Tour" (the "Treetop Tour"), an on-shore zip line excursion in St. Maarten. Royal Caribbean contracted with an on-shore excursion provider, defendant "Rendezvous Tour Company" ("Rendezvous"), to provide the Treetop Tour. Rendezvous, in turn, contracted with defendant Dutch Tours to provide bus transportation from the *Freedom of the Stars* to the location of the Treetop Tour. Dutch Tours has direct contracts with Royal Caribbean for other excursions but not for the one at issue here. On July 19, 2012, while en route to the Treetop Tour, the Dutch Tours' bus carrying the Plaintiffs crashed. Plaintiffs are suing the defendants for claims related to the injuries they sustained in that crash.

This Court previously dismissed the *in personam* claims against Dutch Tours for lack of personal jurisdiction. [ECF No. 90]. Plaintiffs then, with leave of the Court, filed an unopposed Verified Amended Complaint against Dutch Tours [ECF No. 99], praying

for attachment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule B").

The Undersigned directed issuance of a summons and process of maritime attachment and garnishment on January 31, 2014.  [ECF No. 104].  Dutch Tours appeared for the limited purpose of defending against the Rule B attachment and garnishment action, and argued in its Answer and Affirmative Defenses [ECF No. 106], that, among other things, this Court is without admiralty jurisdiction over any claim against it in the Amended Complaint.  In its Answer and Affirmative Defenses, Dutch Tours also requested a post-attachment hearing pursuant to Rule E(4)(F) of the Supplemental Rules.  That hearing was held, pursuant to Local Admiralty Rule B(5)(b), on February 20, 2014.  Plaintiffs and Dutch Tours submitted briefs both before and after the February 20, 2014 hearing on whether the Rule B attachments should be vacated.

Four garnishees responded to the process served upon them for maritime attachment and garnishment.  Silversea Cruises, Ltd. served notice [ECF No. 129] on March 7, 2014 that it owes $4,878.00 in intangible debt to Dutch Tours; Carnival Corp. served notice [ECF No. 130] on March 7, 2014 that it owes Dutch Tours $2,856.00; Royal Caribbean and Celebrity Cruises each served notices on March 10, 2014 [ECF Nos. 131; 132] that noted that "no funds are currently owed to Dutch Tours" but that each "reasonably expects to be in possession of funds owed to Dutch Tours in the near future but is unaware of the amount at this time."

## II.    ANALYSIS

### 1)  Whether Rule B Requires an Admiralty Claim.

The parties disagree about whether Rule B requires an admiralty claim to exist against Dutch Tours or whether the Court can use supplemental jurisdiction as a basis to use Rule B's *quasi in rem* procedure against Dutch Tours even if there is no admiralty claim against that defendant.

Not surprisingly, Plaintiffs assert that they may still pursue a Rule B claim against Dutch Tours without admiralty jurisdiction over their claim against that specific defendant because "admiralty jurisdiction would be extended through the concept of supplemental jurisdiction."  [ECF No. 127, p. 3].  Plaintiffs contend that 28 U.S.C. § 1367 allows supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  [*Id.*]  Because all of the claims against all of the parties stem from the same controversy, Plaintiffs then argue, "even where admiralty jurisdiction did not independently exist over the claims against Dutch Tours, admiralty jurisdiction would be extended via the doctrine of supplemental jurisdiction."  [*Id.* at pp. 3-4].

To support this argument, Plaintiffs rely on *Belik v. Carlson Travel Group, Inc.*, No. 11-21136-CIV, 2012 WL 4511236, at *5 (S.D. Fla. Oct. 1, 2012), where the Court explained "with regard to the remaining defendants, the Court notes that if it has admiralty

4

jurisdiction with respect to a particular defendant, it has admiralty jurisdiction over an entire case, even when non-maritime claims – which arise from the same operative facts, as is the case here, are brought in the same suit."   Therefore, the *Belik* Court concluded, it had admiralty jurisdiction over a claim against Mexican Defendants who operated a bar/restaurant in Cozumel, Mexico where a Carnival cruise passenger became a tetraplegic after diving into the water from the seawall during the "Cozumel Beach Party" excursion he took in port within sight of the cruise ship.

In response to a specific question from the Undersigned, Plaintiffs' post-hearing brief contends that *Belik* also applies to a *quasi in rem* case under Rule B "because there is simply no reason that the analysis would be any different."   [ECF No. 127, p. 5]. Describing Rule B as merely a procedural tool, Plaintiffs contend that Rule B "does not alter or change the underlying admiralty jurisdiction in any way, shape or form."

Dutch Tours, however, disagrees with the supplemental jurisdiction approach proffered by Plaintiffs and argues that the *quasi in rem* Rule B claim against it must be vacated if there is no maritime claim or admiralty jurisdiction independently established over it.   And it contends that *Belik* and the cases it relies upon[2] have no application to a Rule B *quasi in rem* claim.

---

[2]      *Belik* cited, among other authorities, *Rocco Carriers, Ltd. v. M/V Nuremberg Express,* 899 F.2d 1292, 1296-97 (2d Cir. 1990) for the rule that "admiralty jurisdiction extends to an entire case including non-admiralty claims against a second defendant."

Dutch Tours notes that *Belik* does not address at all the individualized jurisdictional analysis in a Rule B claim -- "whether a plaintiff has a maritime claim against the defendant in the amount sued for." *See* Advisory Notes to Supplemental Rule B.  In fact, Dutch Tours emphasizes, *Belik* has absolutely nothing to do with a Rule B claim at all.  Dutch Tours readily concedes that a court may exercise supplemental jurisdiction to hear non-maritime claims to promote judicial economy and observes that "this is done on a regular basis in admiralty."  [ECF No. 128, p. 5].  But it emphasizes that this practice and the cases which permit it do not "transform[] a non-maritime claim into a maritime claim and permit[] a court to dispense with the jurisdictional inquiry **required** to determine whether a plaintiff has a **maritime claim** against a particular defendant **in a Rule B attachment**." [*Id.* at p. 6] (emphasis added).

For the reasons discussed below, the Undersigned concludes that Dutch Tours' argument is the more persuasive and that a plaintiff must specifically establish an admiralty or maritime claim against the particular Rule B *quasi in rem* defendant even though supplemental, *in personam* jurisdiction would be permitted over that very same defendant if a court had *in personam* admiralty jurisdiction over other defendants.

Rule B is a procedural mechanism whereby a plaintiff with an *in personam* claim against a defendant not subject to a court's personal jurisdiction may reach that defendant's assets found within the court's jurisdiction via attachment or garnishment. In this sense, Rule B is a *quasi in rem* proceeding.  The plaintiff's claim is against a

6

person, not a thing, but because the person cannot be found within the court's jurisdiction, the "plaintiff is protected by the ability to proceed against the thing." *Sembawang Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983, 987 (5th Cir. 1992).

Rule B may be used only in conjunction with admiralty or maritime claims -- hence it is part of the Supplemental Rules for **Admiralty or Maritime** Claims. (emphasis added). Both the official comments to Rule B and pertinent case law bolster this notion. The official comments note that the order of attachment or garnishment "will issue when the plaintiff makes a prima facie showing that he has a **maritime claim against the defendant** in the amount sued for and the defendant is not found in the district." (emphasis added). Courts consistently note the same four requirements for a Rule B claim. The Plaintiff must show that:

(1) it has a valid *prima facie* **admiralty claim** against the defendant;[3]

2) the defendant cannot be found within the district;

3) the defendant's property may be found within the district; and

4) there is no statutory or maritime law bar to the attachment.

*Williamson v. Recovery Ltd. P'ship,* 542 F.3d 43, 51 (2d Cir. 2008) (emphasis added); *James v. M/V Eagle Exp.,* CA 12-423-MJ-C, 2012 WL 3068791, at *6 (S.D. Ala. July 27, 2012); *see*

---

[3]  In a pre-hearing memorandum, Plaintiffs slightly but significantly change the language of this first requirement—by omitting the words "admiralty claim" and substituting "*in personam* claim." [ECF No. 115, p. 5]. But the law requires an admiralty claim. *See e.g., Vitol*, 708 F.3d at 541 ("valid prima facie admiralty claim against the defendant").

*also Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527, 541 (4th Cir. 2013) (noting the four factors).

The first requirement echoes the above-referenced official comment to Rule B: the plaintiff's claim against the defendant that is the subject of a Rule B attachment must be an admiralty claim. *See also Williamson*, 542 F.3d at 52 (upholding district court's decision to vacate Rule B attachment against certain defendants where there was no prima facie showing of the requisite admiralty claim against those defendants); *Euro Trust Trading S.A. v. Allgrains U.K. Co.*, No. 09 Civ. 4483(GEL), 2009 WL 2223581, at *2 (S.D.N.Y. July 27, 2009) ("Where a plaintiff lacks a valid prima facie admiralty claim, its request for relief pursuant to Rule B must be denied for lack of subject matter jurisdiction."); *Beluga Chartering GMBH v. Korea Logistics Sys. Inc.*, 589 F. Supp. 2d 325, 327 (S.D.N.Y. 2008) ("Beluga must first show that it has an in personam claim against the defendant which is cognizable in admiralty").

Claims properly before the Court via *only* supplemental jurisdiction cannot be the subject of a Rule B attachment or garnishment. In this way, Rule B claims are unlike traditional *in personam* claims. A court can exercise its supplemental jurisdiction authority to hear non-admiralty, *in personam* claims against co-tortfeasors where the court derives subject matter jurisdiction via admiralty jurisdiction over *other* tortfeasors. As described above, this was the case in *Belik*, 2012 WL 4511236, where a district court judge in this district found that she could hear a plaintiff cruise line passenger's claim

against an on-shore bar via supplemental jurisdiction because the court already had admiralty jurisdiction over the plaintiff's related claims against the cruise line.  But, that is not to say that the claim against the on-shore bar was within the court's *admiralty* jurisdiction—it was within the court's *supplemental* jurisdiction.  And that claim was not a Rule B *quasi in rem* claim against the bar operators, it was an *in personam* claim asserted under the umbrella of the claim against the cruise line.

One maritime scholar analyzing the issue explained it this way:

> In multiple tortfeasor situations, the claims against each tortfeasor must be analyzed separately to determine whether admiralty jurisdiction exists as to each claim. As long as there is a case of admiralty jurisdiction against one of the tortfeasors, the cases against the others can be heard under the court's supplemental jurisdiction. But cases against nonmaritime tortfeasors--tortfeasors as to whom there is no independent basis for admiralty jurisdiction--cannot be regarded as themselves within the admiralty jurisdiction and *must* therefore be decided on the basis of state substantive law.

David W. Robertson, <u>Admiralty Jurisdiction Over One Co-Tortfeasor Cannot Effectuate Admiralty Jurisdiction Over Another</u>, 37 J. Mar. L. & Com. 161, 161-62 (2006) (internal citations omitted).

The difference between claims subject to admiralty jurisdiction versus supplemental jurisdiction may not be of much import in other, more-typical circumstances (because there often would  be admiralty jurisdiction over a cruise ship operator, for instance, and *in personam* jurisdiction over another defendant who is brought into the case through supplemental jurisdiction, as occurred in *Belik)*.  Here,

however, the difference is worthy of significant analysis because a *quasi in rem* Rule B claim must be based on admiralty jurisdiction over the particular Rule B defendant (i.e., Dutch Tours in the instant case).

Claims based on supplemental jurisdiction are not necessarily also admiralty claims. Rule B's unique procedural posture, as a *quasi in rem* proceeding, allows a court to reach a defendant's assets even where it cannot reach the defendant. But in such an instance, the claim subject to Rule B must be one that sounds in admiralty. So Plaintiffs' claims against Dutch Tours must sound in admiralty in order to properly be the subject of a Rule B attachment effort. Plaintiffs cannot rely on supplemental jurisdiction to justify their Rule B claim against Dutch Tours.

### 2) The Test for Admiralty Jurisdiction.

A "party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of **location** and of **connection with marine activity**." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (emphasis added). Each of these conditions is examined in turn below.

### a. Locality

The locality portion of the admiralty jurisdiction test asks "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.*; *see also* 46 U.S.C. § 30101(a). Admiralty jurisdiction can extend to torts that occur away from a vessel in navigable waters. *Norfolk S. Ry. Co. v. Kirby,*

543 U.S. 14, 15 (2004) (noting that "the shore is now an artificial place to draw a line . . . [m]aritime commerce has evolved along with the nature of transportation and is often inseparable from some land-based obligations."). Framed by that flexible perspective, admiralty jurisdiction in *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 899 (11th Cir. 2004), extended to a sexual assault committed by a cruise ship employee against a cruise ship passenger that occurred on land at a port of call. And in *Skeen v. Carnival Corp.*, 08-22618-CIV, 2009 WL 1117432 (S.D. Fla. Apr. 24, 2009), admiralty jurisdiction extended to claims against a cruise line and on-shore excursion operator related to an accident that occurred during an on-shore excursion.

In this case, the plaintiff cruise ship passengers were allegedly injured while traveling by bus to an on-shore excursion. Royal Caribbean offered and sold tickets for the on-shore excursion to each plaintiff while aboard the vessel. Rendezvous, the on-shore excursion provider, contracted with Dutch Tours, a third party, to provide the bus service. In a factually similar case, another court in this district extended admiralty jurisdiction to a cruise ship passenger's claims against a cruise line related to injuries sustained on a **bus ride** in transit from an on-shore excursion. *Balaschak v. Royal Caribbean Cruises, Ltd.*, 09-21196-CIV, 2009 WL 8659594 (S.D. Fla. Sept. 14, 2009).

In *Balaschak*, the plaintiff cruise ship passenger, while aboard the ship, purchased a three-and-a-half hour excursion on Dominica which began with a bus ride to a mountain-top location where the passengers learned to prepare local dishes. The truck

11

crashed on the return trip and Balaschak was severely injured.  In deciding a motion to dismiss, the district court needed to determine whether admiralty jurisdiction existed. Noting that both the United States Supreme Court and the Eleventh Circuit "have adopted an 'expansive view' of admiralty jurisdiction to provide for the uniform application of general maritime law," (internal citations omitted), the Court held that the location test had been met.  In doing so, the Court noted that (1) the cruise ship operator promoted the excursion to its passengers aboard the ship, (2) the plaintiff bought the excursion on board as well, and (3) the excursion was a scheduled part of the cruise.  Moreover, the court explained that "'a ruling that admiralty jurisdiction did not extend literally beyond the gangplank in this case would upset the very uniformity that the Supreme Court has determined is so important for maritime activity.'" *Balaschak*, 2009 WL 8659594, at *4 (quoting *Doe*, 394 F.3d at 902).

The locality test factors here are not significantly different than those in *Balaschak*. In fact, the excursion to the mountain top in *Balaschak* may well have been *further* from the water and further from the port than the zip line excursion in the instant case.   And the circumstances surrounding the promotion and sales of the excursion to Plaintiffs are virtually identical.

Dutch Tours emphasizes its status as an on-shore bus operator who did not have a contract with Royal Caribbean to provide bus transportation for the passengers who purchased this specific excursion.  But Dutch Tours is not exactly akin to a purely local

transportation entity, like a taxi driver.  To the contrary, Dutch Tours is familiar to Royal Caribbean and contracts directly with the cruise ship operator for other tours on the island.  Moreover, there is no allegation that Royal Caribbean was unaware that Dutch Tours was the company which provided its passengers with the transportation to the zip line excursion from port.  To the contrary, it appears as though Royal Caribbean is well aware of Dutch Tours' involvement as the land-based carrier that routinely drives its passengers to the zip line excursion it markets and sells aboard the vessel. Based on these factors, the Undersigned finds that the locality requirement for admiralty jurisdiction has been met.

### b.  Connection with Maritime Activity

The connection to maritime activity test involves a two-part inquiry: (1) "[a] court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce," and (2) "a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity."  *Doe*, 394 F.3d at 900 (citing *Grubart*, 513 U.S. 527 at 534).

The first element is met here.  An accident that occurs during an on-shore cruise ship excursion can have a negative impact on maritime commerce.  The cruise line industry is maritime commerce, on-shore excursions play a key role in that commerce by attracting passengers, and an accident that occurs during such an excursion may

well ultimately cause a decrease in total passenger volume.  *See, e.g., Balaschak*, 2009 WL

8659594, at *4 (finding the same); *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232 (S.D. Fla.

2006) (finding federal maritime jurisdiction governed analysis of claim that cruise line

failed to warn of dangers of an on-shore excursion); *Belik*, 2012 WL 4511236, at *5

("when a passenger is injured on a shore excursion, it has the potential to impact the

number of excursions purchased by passengers, thereby affecting maritime

commerce.").

The second element is also met here, but barely.  The conduct giving rise to the

claims against Dutch Tours involves Dutch Tours' conduct as a St. Maarten bus

transportation provider for defendant Rendezvous, who in turn operated the Treetop

Tour on-shore excursion promoted and sold by defendant Royal Caribbean to its

passengers.

Plaintiffs allege that Dutch Tours, as one of the so-called "excursion entities,"

breached its duties to the passengers by, among other things, failing to provide a safe

excursion, failing to properly supervise and oversee the excursion, failing to adequately

inspect and/or monitor the bus to ensure that it was reasonably safe for cruise ship

passengers, failing to provide reasonably safe transportation to the cruise ship

passengers participating in the excursion, failing to provide a competent driver for the

transportation used for the subject shore excursion, failing to adequately warn the

excursion participants of the dangers of participating in the excursion, failing to warn

the cruise ship passengers of the dangers involved in driving a bus through such a steep and narrow road, failing to ensure that the route taken to the shore excursion was reasonably safe, and failing to provide proper emergency medical care.

As noted in *Balaschak*, when she concluded that the second issue of the connection test was met, Judge Altonaga explained that the general character of the activity giving rise to the incident involved the alleged negligence in selecting and promoting the cooking adventure excursion to the mountaintop location and the failure to warn passengers of the risks.  In the instant case, Plaintiffs raised those same types of allegations.  Moreover, the responses to the garnishments demonstrate that several cruise ship operators are indebted to Dutch Tours and Dutch Tours is under contract to Royal Caribbean (and other cruise lines) to provide shore excursions.

The circumstances here are not overly attenuated to traditional maritime activity. To the contrary, the relevant factors are (1) the alleged negligence of an excursion transportation company (2) which knowingly and on a schedule (3) picks up cruise ship passengers for an (4) excursion they purchased (5) on board a vessel from a cruise operator which (6) promoted, marketed, and sold the excursion and was aware of the reputation of the transportation company because (7) it specifically contracted with that transportation company to provide excursions to cruise ship passengers.  To be sure, admiralty jurisdiction over a purely local transportation provider, such as a taxi owner

who fortuitously picks up cruise passengers traveling to port of call locations of their own choosing would not exist.  While the Undersigned notes that the factors here are barely enough to confer admiralty jurisdiction for the Rule B claim against Dutch Tours, the all-important point is that it is sufficient.  *See generally Meyer v. Carnival Corp.*, 938 F. Supp. 2d 1251, 1260 (S.D. Fla. 2013) (cruise ship operators have "no trouble finding local excursion companies to partner with" because "partnering with a major cruise line … can be highly lucrative for the local touring companies"); *Skeen*, 2009 WL 117432, at *3 ("cruise line ports-of-call stops and onshore excursions are traditional maritime activities").

## III.    CONCLUSION

Having found that admiralty jurisdiction exists for Plaintiffs' Rule B claim against Dutch Tours, the Undersigned denies the request to vacate the attachments.

**DONE AND ORDERED** in Chambers, in Miami, Florida, June 3, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All counsel of record

16